No. 95.—FIELD & ADAMS, plaintiffs in error, *vs.* CINCINNA-TUS M. LUCAS, defendant in error.

[1.] The guardian of a Lunatic may sue in his own name as guardian, to recover the possession of personal property belonging to his ward, and which has been converted since his appointment.

[2.] Mere irregularities committed under the writ *de lunatico inquirendo*, such as the report being made by thirteen men instead of twelve, will not vitiate the proceeding, and the judgment thereon.

[3.] The inquisition of lunacy and the appointment of a guardian consequent thereon, is *prima facie* evidence only, and not conclusive against third persons, who were not parties to it.

Trover, in Bibb Superior Court. Tried before Judge POWERS, May Term, 1856.

This was action of Trover brought by Cincinnatus M. Lucas, guardian of Littleberry Lucas, a lunatic, agains John M. Fields and Abram Adams, for thirty bags of cotton, which they had received into their warehouse in the city of Macon, and converted to their own use, &c.

Plaintiff opened his case by reading the declaration: Defendant's counsel demurred thereto, upon the ground, that it appeared that the action was brought in the name of the *guardian* of the lunatic, and not in the name of the lunatic himself.

The Court overruled the demurrer, and defendant excepted.

Plaintiff then introduced his letters of guardianship of said Littleberry, as a lunatic; defendant objected to the ad-

mission of said letters, on the ground, that no judgment was shown, nor any fact to give the Ordinary jurisdiction. The Court overruled the objection, and defendant excepted.

*Ansly J. Wyche,* sworn for the plaintiff, testified, that the cotton in controversy was in the warehouse of Field & Adams, in the spring of 1853. Cincinnatus M. Lucas, the plaintiff sold the cotton to witness and received the money therefor. Adams, one of the defendant's refused to deliver me the cotton ; he refused in presence, and on demand of the plaintiff, who then refunded the money to witness. Thirty bags— averaged about 420 or 430 pounds a bag. When Littleberry Lucas was in town, Adams told me not to buy the cotton of him as he would not deliver it. When plaintiff went with me to see Adams, he offered to show his letters of guardianship. In my opinion Adams had received notice of the appointment; this demand of the cotton was made previous to June 1855. Plaintiff said the cotton belonged to him as guardian of Littleberry Lucas. The cotton was in store when witness made the trade with plaintiff; but he did not have the cotton receipts. Adams may have said he would deliver the cotton without his receipt. The cotton was made, I think, in Monroe county. Plaintiff lived in Crawford county. The cotton was made on the plantation, and by the slaves of Littleberry Lucas. Adams showed witness a letter from Cincinnatus M. Lucas, written to defendants, informing them that he was the lawful guardian of his father, and witness is quite sure that Adams had this notice before the cotton was stored, and when the first load was brought; also that the sale to him was prior to the final disposition of the cotton by defendants.

*Thomas J. Wyche,* on the part of plaintiff. Saw the cotton last May, it was stored in the defendant's warehouse in April, about the time the cotton was stored, they had been notified, that Littleberry Lucas had been declared a lunatic;

it was known to Adams prior to the purchase spoken of by Ansly Wyche: My brother and I were to give $8\frac{3}{4}$ cents a pound for the cotton, and it came to a little over $1,300. The price was higher when it was delivered to the order of Littleberry Lucas; when it was sold cotton was worth 11 cents per pound. I think its aggregate value was over $1,500 at the time of sale. Witness made a calculation on the above data, and ascertained that at $8\frac{3}{4}$ cts., the cotton would amount to $1,300, and at 11 cents, to $1,595.

Both the Wyches testified that cotton had risen in the market between the first sale by plaintiff to them, and that made by defendants on Littleberry Lucas order; he being present and giving directions about the same, and received the money.

Plaintiff closed.

Defendants offered a copy of the record from the Court o Ordinary of Crawford county, of the proceedings in a cause in which plaintiff was movant, and Littleberry Lucas was declared a lunatic. Plaintiff objected to its introduction.

The Court sustained the objection; remarking that the said judgment from the Court of Ordinary could not be enquired into on the trial of this cause; and defendants excepted.

The defendants then offered to prove by depositions then in Court and duly executed and returned, and by witnesses then present, the following facts:

(It being distinctly admitted by plaintiff that the cotton in controversy was raised on the farm and by the slaves of Littleberry Lucas, the alleged lunatic.)

That Littleberry Lucas sent the cotton to Macon and caused it to be stored in defendant's warehouse in his own name; that cotton receipts were made out in his name, and delivered to him; that said Littleberry was for several months before and after the storage and sale of the cotton, of perfectly sound mind; not only of sound mind, but remarkably keen

Field & Adams vs. Lucas.

and shrewd; careful of his money, and sold the cotton for a much larger sum than plaintiff was to get for it; that he presented the receipts for the cotton to defendants, demanded the cotton, and sold it to Robert F. Ousley for a fair and full market price, and received the money, delivered the cotton receipts to Ousley; and that defendants delivered the cotton to Ousley on the production of said receipts; and further offered to prove in mitigation of damages, that a part of the proceeds of said sale was applied and paid to overseers, and for necessaries suitable to the rank and condition in life of said Littleberry; and that he was not only competent and qualified to attend to his own business, but *very competent and remarkably well qualified.*

The Court refused to admit any proof going to show sanity in the alleged lunatic; storage or sale of the cotton by the lunatic; receipt of the proceeds of sales by him, or his paying his debts therewith; or that the same or any part of it was expended for necessaries, overseer's wages or other thing; and defendants excepted.

Defendants' counsel then requested the Court to charge the jury, that if they believed from the evidence that the cotton was raised on Littleberry Lucas' farm and by his slaves, and stored in his name, the action should have been brought in the name of the lunatic by his guardian, and the property is not in the plaintiff, then they should find for the defendants.

Which charge the Court refused to give, and defendants excepted.

STUBBS, HILL & TRACY, for plaintiffs in error.

LANIER & ANDERSON, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The first error complained of is, that the suit was brought in the name of the guardian instead of that of the lunatic.

It seems to be the practice in England, for the *non compos* himself to be a party plaintiff when suing and a party defendant when sued. But the reason is, his estate is not vested in his guardian, upon inquisition found. The title remains in the lunatic himself. Not so under the laws of this State. *Cobb* 342. Certainly the right of possession, if not of title, under our laws, vests in the guardian, and this entitles him to sue in his own name to recover the property of his ward, or damages for its wrongful conversion.

[2.] It is next insisted, that the order of the Court, declaring Littleberry Lucas a lunatic and appointing Cincinnatus Lucas, his son, his guardian, is a nullity. The statute authorizing this proceeding seems to have been strictly pursued: True, thirteen men instead of twelve, made the report. The Act requires the commission to be directed to eighteen, any twelve of whom shall execute it. The fact that thirteen acted, does not vitiate the proceeding. This is not one of the cases, where the cabalistic number twelve, in imitation of the twelve signs of the Zodiac, twelve months in the year; twelve Patriarchs; twelve Apostles, &c., must be strictly observed. Had all eighteen united in the report, perhaps it would have strengthened, instead of destroying, the report. They do not find a *verdict*, that may be thing, that requires to be so strictly observed. They report only. Indeed, all the departures from the law which are complained of, are but irregularities which do not affect the judgment, and cannot be attacked, collaterally, if they did.

[3.] While the letters of guardianship remained unrevoked, was it competent for the defendant to show that the lunatic was capable of contracting? The authorities are in conflict upon this point. In the different States of this country, it is provided by statute, that upon representation or request, idiots, lunatics, drunkards, and other persons of unsound mind, may be put under guardianship; and in such cases, the finding of the fact of lunacy by a competent Court and the appointment thereby of a guardian, is conclusive evi-

dence of unsoundness of mind, so as to render all contracts, subsequently entered into by the lunatic, void, (14. *Pick.* 280 ; 1. *Mass. Rep.* 543 ; 12. *Barbour* 235 ; 14. *Ib.* 169 ; 2. *Paige* 422,) unless in cases of absolute necessaries supplied to the lunatic under special circumstances. 8. *N. Hamp. Rep.* 569. But the authorities do not agree even in this coun-try. In *Hart vs. Deamer*, 6. *Wend. Rep.* 497, it was held that an inquisition taken under a writ, *de lunatico inquirendo*, is admissible, though not conclusive, evidence to prove the lu-nacy of an obligor in an action of debt on bond; and Chief Justice Savage who delivered the opinion of the Court, refer-red to the case of *Bagley vs. Bales*, 8. *Johns. R.* 186. ; 15. *Johns.* 98, *and* 15. *Id.* 147, and said, many more might be added in which inquisitions had been received as competent, though not conclusive, evidence.

So in the matter of Gangwere's estate, (14. *Penn. Rep.* 417, the Court held, that an inquisition of lunacy finding the party a lunatic without lucid intervals, is *prima facie* evidence, but not conclusive; and that even a petitioner for the pro-ceeding, who was a witness also, is not estopped from assert-ing the truth against it, and showing that the party had lu-cid intervals. And in *Hutchinson vs. Sandt*, 4. *Rawle* 234, it was held that one of the *inquest himself* was not estopped, and that the finding was persuasive evidence only.

In *Hopson vs. Boyd*, 6. *B. Monroe's Rep.* 296, the Court held that an inquisition of lunacy is only *prima facie* evi-dence against strangers; and is entitled to but little weight in Kentucky, unless it find the subject to be an idiot from birth.

The same doctrine is maintained in *Doe ex dem. Morris Aber, and Morris Aber, Jun. against John Clark*, 5 *Hol-stead's Rep.* 217; namely, that an inquisition of lunacy is not conclusive against any person, not a party to it, and that when admitted in evidence, the party against whom it is used, may introduce proof, that the alleged lunatic was of sound mind at any period of time covered by the inquisition.

In England, the rule is considered well settled by Mr. Shelford in his work on lunacy, page 290, and by Mr. Story in his treatise on contracts, that an inquisition only creates presumptive evidence of lunacy, as to third persons. *See also,* 2. *Atkyn* 412-13; *Sergerson vs. Sealey; Collison* 389 §1. 2. 3.; *Farlan vs. Silk, ex'r, &c.* 3. *Camp.* 126; 3. *Atkyn* 184; 9. *Ves.* 605; 2. *Madd.* 578; 1. *Wm. Black. Rep.* 365.

Some of the Courts (see the case in 14. *Pick.*) in this country state, the reason for the English rule does not apply here. We are unable to satisfy ourselves of the truth of this assumption. While we appreciate the evils, not to say the great inconveniencies that must result, from not holding the judgment of the Ordinary conclusive, until the letters of guardianship are revoked, still as the doctrine appears to be well settled in England, and our own Courts are divided, we think it safest perhaps to hold that the inquisition is not conclusive upon third persons, not parties to it; still we must say, that it should require the clearest and most satisfactory proof, that the alleged lunatic was of sound mind, and had been fairly dealt with in a contract made with him at a period of time covered by the letters of guardianship. For myself I am free to say that I am not entirely content with the judgment, and I know not that my colleagues have come rather reluctantly to this conclusion. Perhaps the Legislature would do well to intervene upon this subject.

Judgment reversed.